UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
  UNITED STATES OF AMERICA,

                                        **ORDER**

  v.

                                        20-CR-00224 (PMH)

  MICHAEL NICHOLAS,

                       Defendant.
------------------------------------------------------------X
PHILIP M. HALPERN, United States District Judge:

On October 9, 2024, Defendant Michael Nicholas filed a *pro se* motion for a writ of error *coram nobis*. (Doc. 141). Liberally construed, Defendant's claims are that there was an inadequate factual basis for the § 924(c) charge and he received ineffective assistance of counsel. (Doc. 141).

Defendant is currently serving a 180-month sentence at FCI Danbury ("Danbury"), a low-security federal correctional institution, after having been convicted on November 29, 2021, following his guilty plea pursuant to a plea agreement, of conspiracy to distribute narcotics and possession of firearms in furtherance of drug trafficking. (*See* Doc. 107).

For the reasons set forth below, Defendant's motion is DENIED.

## **BACKGROUND**[1]

Defendant was part of an active and industrious narcotics conspiracy in Poughkeepsie, New York. (PSR ¶¶ 11-18, 20). He sold substances containing fentanyl to a Confidential Informant that Defendant marketed as heroin, and had been intercepted over wiretaps discussing the sale of large amounts of controlled substances. (*Id*. ¶¶ 13-16). Law enforcement officers recovered, during a search of Defendant's residence on March 25, 2020, 13 kilograms of cocaine; 1.5 kilograms of

---

[1] The Court draws the background facts principally from the record of the underlying criminal proceeding, including the Presentence Investigation Report dated May 20, 2021, prepared by the Probation Office in connection with Defendant's sentencing (Doc. 76, "PSR").

fentanyl; 1 kilogram of heroin; 200 grams of crack; 4 pounds of marijuana; $51,000 from a safe; $9,000 from Defendant; three firearms, one of which was loaded; and a bag of ammunition. (*Id*. ¶ 17). Defendant was charged in a Superseding Information with, *inter alia*, conspiring to distribute and possess with intent to distribute crack, cocaine, and fentanyl in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846; and possession of a firearm in furtherance of such drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (*Id*. ¶¶ 1-3, 18; Doc. 60).

On March 2, 2021, Defendant appeared before this Court and pled guilty to the charges in the Superseding Information pursuant to a written plea agreement dated February 24, 2021 ("Plea Agreement"). (3/2/21 Plea Tr.). After placing Defendant under oath, the Court conducted a thorough allocution of him. (*Id*. at 6-8). Among other things, Defendant affirmed that he had attended school through the tenth grade; that in the past 24 hours he had not consumed any drugs, alcohol, pills, or medicine; and that he had not been treated or hospitalized for any mental illness or mental health problem. (*Id*. at 6-7). Defendant further affirmed that his mind was clear and that he understood what was happening. (*Id*. at 7). Defendant confirmed that he had "enough time and opportunity" to discuss the case with his attorney and that he was satisfied with his attorney's representation of him. (*Id*. at 7-8). The Government and defense counsel likewise represented that they had no doubts as to Defendant's competence to plead guilty. (*Id*. at 8). Accordingly, the Court found that, on the basis of Defendant's responses to the Court's questions, its observations of his demeanor, and the views of counsel, Defendant was fully competent to enter an informed plea. (*Id*.).

Under the terms of the Plea Agreement that Defendant signed on March 2, 2021 (*id*. at 23), among other things, the Government agreed to accept a guilty plea allocution from Defendant to conspiring to distribute (i) 28 grams and more of mixtures and substances containing cocaine base,

(ii) 500 grams or more of mixtures and substances containing cocaine, (iii) 40 grams or more of mixtures and substances containing fentanyl and (iv) 100 grams or more of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846; and carrying and possessing a firearm during and in relation to and in furtherance of the drug trafficking crime charged in Count One of the Superseding Information, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (*Id.* at 14-16). The parties stipulated to a final offense level of 35 under the United States Sentencing Guidelines (the "Sentencing Guidelines"); 14 criminal history points; and a Stipulated Sentencing Guidelines Range of 365 to 425 months' imprisonment, with a mandatory minimum of 120 months' imprisonment, 60 months of which must be served consecutive to any other sentence imposed. (*Id.* at 24-25; *see generally* Plea Agreement).[2] Defendant admitted the forfeiture allegations with respect to Count One of the Superseding Information and agreed to forfeit the sum of approximately $100,000 and consented to the entry of a Consent Order of Forfeiture. (Plea Tr. 25-27; Plea Agreement at 2).

      Defendant also stipulated in the Plea Agreement that he would "not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 365 to 425 months' imprisonment," or "any term of supervised release that is less than or equal to the statutory maximum." (Plea Tr. at 25; Plea Agreement at 6-7). In addition, Defendant agreed to "waive[] any and all right to withdraw his plea or attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83

---

[2] Although one portion of the transcript indicates that the Stipulated Guidelines Range was 360 to 425 months' imprisonment (Plea Tr. at 24:20), that appears to be a typographic error.

(1963), other than information establishing the factual innocence of the defendant, or impeachment material[.]" (Plea Tr. at 22; Plea Agreement at 7).

The Court, at the March 2, 2021 hearing, conducted a thorough colloquy pursuant to Federal Rule of Criminal Procedure 11 to determine whether the plea was knowing and voluntary and whether there was a factual basis for the plea. (*See generally* Plea Tr.). The Court confirmed that Defendant understood the rights he was giving up by pleading guilty, and that he would be sentenced on the basis of his guilty plea. (*Id*. at 10-13). Defendant acknowledged that he understood he was giving up those rights, except for his right to counsel. (*Id*. at 13). The Government then, at the Court's direction, set forth the elements of the offense to which Defendant was pleading guilty. (*Id*. at 15-17). The Court advised Defendant of the maximum penalties he would face as a result of his guilty plea and confirmed that he understood he faced a five-year mandatory minimum sentence on Count One and a five-year mandatory minimum sentence on Count Two that must be served consecutively to any other term of imprisonment imposed. (*Id*. at 17-18).

The Court confirmed that Defendant understood that, when imposing a sentence, the Court would consider the Sentencing Guidelines along with the factors set forth in 18 U.S.C. § 3553(a) and could impose a sentence that was higher or lower than that called for by the Sentencing Guidelines. (*Id*. at 21). Defendant confirmed that he understood that he would not be permitted to withdraw his guilty plea if the sentence differed from what he expected or from the Stipulated Guidelines Range set forth in the Plea Agreement. (*Id*. at 22).

The Court next confirmed that Defendant had read the Plea Agreement, had discussed "every aspect of it" with his attorney, and understood it fully. (*Id*. at 23). Defendant swore that apart from the Plea Agreement, no one had made him any promises or used any threats, force, or

coercion to induce him to plead guilty or to enter into the Plea Agreement. (*Id*. at 23-24). The Court further confirmed that Defendant understood that he was giving up his right to appeal or otherwise attack or challenge his conviction and sentence, as long as his sentence was within or below the Stipulated Guidelines Range. (*Id*. at 25).

The Government was asked to summarize its proof to ensure there was an adequate factual basis to support Defendant's plea. (*Id*. at 28). The Government's proof included:

> [R]ecordings of controlled buys from the defendant, cooperator testimony, law enforcement testimony, wiretap interceptions from the defendant's cell phone and seizures of a large amount of narcotics from the defendant's residence, all of which would establish beyond a reasonable doubt that from at least September 2018 through March 2020, the defendant agreed with others to distribute and possess with intent to distribute at least 28 grams or more of substances containing cocaine base, 50 grams or more of mixtures and substances containing cocaine, 40 grams or more of mixtures and substances containing fentanyl and a hundred grams or more of mixtures and substances containing heroin . . . .
>
> [T]he government would rely on seizures of firearms from the residence where the defendant also stored narcotics in March 2020 as well as law enforcement reports, both of which would prove beyond a reasonable doubt that the defendant possessed firearms in relation to the narcotics conspiracy charged in Count One.

(*Id*. at 28-31).

Defendant affirmed that he heard the Government's summary of its proof, and that it was accurate. (*Id*. at 29). Defendant made a factual allocution and explained that between September of 2018 and March of 2020, he was selling narcotics in Poughkeepsie, New York; that he agreed with others to sell and distribute drugs; that the narcotics he sold and conspired to sell included 28 grams or more of mixtures and substances containing cocaine base, fifty grams or more of mixtures and substances containing cocaine, forty grams or more of mixtures and substances containing fentanyl, and one hundred grams or more of a mixture or substance containing a detectable amount

of heroin; that he "was selling narcotics for money" and "actually guilty"; and that at the time he was selling these drugs for money, he knew that it was wrong and against the law. (*Id*. at 29-30, 32). Defendant also swore under oath that he possessed, used, and carried a "Desert Eagle"; that he used, possessed, and carried that firearm in relation to the drug trafficking crimes he had just described to the Court; and that his use, possession, and carrying of the firearm was in furtherance of those drug trafficking crimes. (*Id*. at 31-32).

The Court found that Defendant had voluntarily waived his rights, with an understanding of the consequences of his plea; that he had entered his plea knowingly and voluntarily; and that his plea was supported by an independent factual basis. (*Id*. at 33-34). The Court, accordingly, accepted the guilty plea and Defendant was remanded. (*Id*. at 34-35).

On November 29, 2021, Defendant appeared before this Court for sentencing. (Doc. 120, "Sent. Tr."). The Court found that Defendant's Sentencing Guidelines Range was properly calculated at 292 to 365 months' imprisonment, followed by the five-year mandatory minimum on Count Two, which must run consecutive to all other counts, and with a mandatory minimum sentence of 120 months of imprisonment. (*Id*. at 9). Defendant argued that his background, the circumstances of the crime, and the conditions of his confinement in light of the COVID-19 pandemic warranted the imposition of a below-Guidelines sentence. (Doc. 103; Sent. Tr. at 11-22). The Court considered the seriousness of Defendant's offenses, Defendant's difficult childhood, history of drug addiction, criminal history, and family ties. (*Id*. at 23-30). The Court balanced mitigating and aggravating factors, the need to promote respect for the law, the need for deterrence, and the need to avoid unwarranted sentencing disparities. (*Id*.). After considering the nature and circumstances of the offense, and the history and characteristics of the defendant, the Court agreed with both Defendant and the Government to impose a below-Guidelines sentence.

(*Id*. at 15-33). Defendant was sentenced to 120 months of imprisonment on Count One, followed by the mandatory 60 months of imprisonment on Count Two, to run consecutively to Count One, for a total of 180 months of imprisonment, to be followed by 5 years of supervised release on each of Counts One and Two to run concurrently, as well as forfeiture in the amount of $100,000 pursuant to a Proposed Consent Order of Forfeiture. (*Id*.). Defendant's projected release date is February 14, 2033. (https://www.bop.gov/inmateloc/ (last visited Mar. 4, 2025)).

The judgment of conviction was entered on November 29, 2021. (Doc. 107). On October 9, 2024, almost three years after his sentencing, Defendant submitted the instant motion seeking a writ of error *coram nobis*. (Doc. 141). On November 6, 2024, the Court issued an Order directing the Government, should it be so advised, to file a response by November 27, 2024. (Doc. 142). The Government did not file any response and there have been no further submissions in this case.

## DISCUSSION

"A writ of error *coram nobis* 'is an extraordinary remedy available only in rare cases.'" *United States v. Aguiar*, No. 23-6573-CR, 2025 WL 262311, at *1 (2d Cir. Jan. 22, 2025) (quoting *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014)). "A petitioner seeking *coram nobis* relief 'must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.'" *Kovacs*, 744 F.3d at 49 (quoting *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996)). This relief is "'typically available only when habeas relief is unwarranted because the petitioner is no longer in custody.'" *Aguiar*, 2025 WL 262311, at *1 (quoting *Kovacs*, 744 F.3d at 49 (2d Cir. 2014)). Because Defendant remains in custody, the writ of error *coram nobis* "is, therefore, neither necessary nor appropriate." *United States v. Dos Santos*, 979 F. Supp. 949, 951 (E.D.N.Y. 1997).

7

A prisoner in federal custody, however, may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and internal quotation marks omitted). "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Sanders v. United States*, 1 F. App'x 57, 58 (2d Cir. 2001) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *United States v. Brickhouse*, No. 09-CR-01118, 2017 WL 1049509, at *4 (S.D.N.Y. Mar. 16, 2017).

Habeas relief under § 2255 is likewise unavailable. Indeed, "defendant's choice of *coram nobis* may be prompted by the need to avoid the limitation" set forth in § 2255. *Dos Santos*, 979 F. Supp. at 951. The one-year limitation period on § 2255 motions runs from, as applicable here, "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Defendant was sentenced on November 29, 2021 (Doc. 107), and this motion is therefore barred by the one-year limitations period.

Even if the Court were to consider Defendant's claims that there was an inadequate factual basis for Count Two of the Superseding Information and that he received ineffective assistance of

8

counsel, the claims would be rejected. With respect to Defendant's contention that the Government failed to establish the "in furtherance of" element of the § 924(c) charge (Doc. 141 at 2-4), during the plea hearing, the Government explained that Count Two required it to prove that "that the defendant used or carried or possessed the firearm during and in relation to the commission of . . . the narcotics conspiracy charged in Count One of the information." (Plea Tr. at 16-17). Defendant confirmed on multiple occasions during the hearing that he understood this concept and the charges against him. Defendant specifically admitted under oath that he used, possessed, and carried the firearm in furtherance of the charged drug trafficking crime. (Plea Tr. at 31-32). As the Second Circuit has "often noted, statements made under oath at a plea allocution 'carry a strong presumption of veracity.'" *United States v. Albarran*, 943 F.3d 106, 120 (2d Cir. 2019) (quoting *United States v. Doe*, 537 F.3d 204, 213 (2d Cir. 2008)). The Government's proffered evidence, coupled with Defendant's admission that he possessed the firearm in furtherance of the drug trafficking crime, provides a sufficient factual basis for this element of Count Two.

With respect to Defendant's ineffective assistance of counsel claim, as an initial matter, "[a] defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. . . . A guilty plea effectively waive[s] all ineffective assistance claims relating to events prior to the guilty plea." *United States v. Coffin*, 76 F.3d 494, 497-98 (2d Cir. 1996). In any event, the merits of these claims are evaluated under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard requires Defendant to first "show that counsel's performance was deficient," in that it fell below an "objective standard of reasonableness." 466 U.S. at 687-90. "Second, the defendant must show that the deficient performance prejudiced the defense," meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

9

would have been different." *Id*. at 687, 694. There is a "strong presumption" that counsel's conduct "falls within the wide range of reasonable professional assistance," *id*. at 689, "and it is [Defendant's] burden to demonstrate 'that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy,'" *United States v. Yeagley*, No. 08-CR-00707, 2017 WL 76903, at *7 (S.D.N.Y. Jan. 3, 2017) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)). "'[P]urely speculative' arguments about the impact of an error do not establish prejudice." *DeCarlo v. United States*, No. 11-CV-02175, 2013 WL 1700921, at *4 (S.D.N.Y. Apr. 17, 2013) (quoting *United States v. Weiss,* 930 F.2d 185, 199 (2d Cir. 1991) (alteration in original)). Prejudice in this case requires Defendant to show that "but for his attorney's claimed ineffectiveness, he would have gone to trial and been acquitted, or that he would have gotten a sentence lower than the one he actually received." *Davis*, 2019 WL 3429509, at *5. Defendant has not done so here.

      Rather, Defendant claims that "counsel provided ineffective assistance in failing to adequately inform him of the legal elements pertinent to the establishment of a §924(c) charge." (Doc. 141 at 4). During the plea allocution, however, Defendant affirmed that he was "satisfied with [his] attorney's representation" of him and had "discussed with [counsel] the consequences of . . . entering a guilty plea." (Plea Tr. at 8). The Government put on the record the essential elements of the crimes charged (*id*. at 15-17) and summarized the evidence expected to be introduced at trial (*id*. at 28-29, 30-31). Defendant affirmed that he understood that if he did not plead guilty, the Government "would have to prove each and every element" of those charges beyond a reasonable doubt at trial. (*Id*. at 16, 17). Defendant's conclusory allegations that "enough effort was not put forth in [his] defense" (Doc. 141 at 2) and that counsel "fail[ed] to adequately inform him of the legal elements" of the crimes charged (*id*. at 4) are belied by the record. It is

axiomatic that "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). To the extent Defendant argues that his counsel rendered ineffective assistance by failing to file a notice of appeal (Doc. 141 at 2, 5), Defendant's claim fails "because he is unable to establish that he in fact asked his lawyer to file an appeal . . . . [Defendant] has not supplied any detail regarding when or on what basis he would have requested [counsel] to prepare an appeal. He only asserts in conclusory terms that he 'instructed counsel to file an appeal.'" *Garcia v. United States*, No. 04-CV-06019, 2008 WL 821816, at *3 (S.D.N.Y. Mar. 28, 2008) (citing *United States v. Moreno-Rivera*, 472 F.3d 49, 52 (2d Cir. 2006) (defendant not entitled to relief where court could not ascertain whether he gave timely instructions to counsel to file an appeal)), *adopted by*, 2008 WL 2434238 (S.D.N.Y. June 13, 2008).

## CONCLUSION

Based on the foregoing, Defendant's motion for a writ of error *coram nobis* is DENIED.

The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. 141 and to mail a copy of this Order to Defendant at, # 87965-054, FCI Danbury, 33 ½ Pembroke Rd., Danbury, CT 06811.

SO ORDERED:

Dated: White Plains, New York
       March 7, 2025

_____
Philip M. Halpern
United States District Judge

11